Ladies and gentlemen, we have one matter before the court today. Attorney Steve Blank v. Zahra Ali. Please keep your voices up. This is from Sal Street. It's noisy. And that is not a microphone. Please proceed, please. Thank you, Your Honor. I'll move this out of the way since it's not working. We do need it to record. And I would like to reserve three minutes for rebuttal time, if I could. Good morning, Your Honors, and may it please the Court, Pete Patterson for the Plaintiff's Appellants. Unless the Second Amendment is a second-class right, Cook County's tax on firearms and ammunition must be struck down. That is because the Supreme Courts of Illinois and the United States have constitutional rights across a wide array of rights, be it the right to vote, the right to access the courts, the right to marry, the free exercise of religion, or the freedom of the press. One thing has united all these areas, and that is that the exercise of these rights cannot be taxed. Unlike the First Amendment's right to freedom of religion and freedom of speech, there is a long tradition of jurisprudence in our country that what's embodied in the Second Amendment has been subject to the police power. In fact, the Illinois Constitution specifically says it's subject to the police power. We have the Heller case, which changed the landscape a little bit. And what Heller seems to tell us, because we try very hard here to follow what the U.S. Supreme Court tells us to do. Heller says there is a right in the Second Amendment to keep and bear arms in one's home for self-defense purposes, essentially. And they specifically said in that case that it did not intend to disturb the existing jurisprudence about the right to regulate the commercial sale of firearms. Correct? That's what Justice Scalia said in Heller. Well, what Justice Scalia said in Heller was that we don't need to call into question long-standing regulations on the right to keep and bear arms, such as conditions and qualifications on the commercial sales of firearms. And your position is that this relatively de minimis tax is not such of a commercial regulation that Justice Scalia specifically said was still permitted? Well, he said presumptively constitutionally. He didn't say permitted. But yes, this is not a condition or qualification on the sale of arms. It does not regulate firearms dealers. It is a tax on the consumer, as Judge Chang of the Court held, acquisition is the most fundamental prerequisite of having a firearm in the home. This is a tax that is not a long-standing, this is alien to our history of firearms regulation. And what about the tax that's been in place since the 1930s, the federal tax on firearms which was upheld by the U.S. Supreme Court, I think in the 30s or 40s? Yes, that was a tax on sawed-off shotguns and machine guns. And Heller made clear, had these been within the right to keep and bear arms, that may well have been unconstitutional. The point was that those arms were not protected arms. Here, the arms are protected. And one other thing that's important is Crook County insists it is not exercising its police power. It's exercising its tax power. And so that, as under the language that Your Honor has pointed out, under the Illinois Constitution, which says subject only to the police power, the individual citizen's right to keep and bear arms shall not be infringed, it explicitly, by its terms, rules out a tax power application to the right to keep and bear arms. And if someone goes to the Maxine store and displays and purchases a handgun, are they not charged the regular state and county and local sales taxes for that purchase? Yes, absolutely they are. And that's what the United States Supreme Court and the Illinois Supreme Court has made clear. That is fine. We're not challenging that. The issue is when you single out a constitutional right for taxation. And the Minneapolis Star and Tribune case is very interesting in that respect. And that was a use tax on paper and ink that newspapers used to print their products, obviously. And in that case, the evidence showed that the paper's tax burden was actually less than it would have been had their products been subject to the generally applicable sales tax. But the court said that doesn't matter. The burden, the injury, is the exposure of this constitutional right to the tax power. We are not going to allow that. We're not going to look at, you know, what the relative tax burden is. It's the singling out of the right for taxation that is the burden and that is the problem. And that's exactly what we have here. The Illinois Supreme Court said the same thing in the Boynton case. You know, you can't single out marriage, a fundamental right, for taxation. And again, the United States Supreme Court has explicitly said that the Second Amendment is not a second-class right. So unless there's going to be some different special test that applies to the Second Amendment, the right simply cannot be taxed. And the county is somewhat in between a rock and a hard place here because they are preempted from regulating by the Freud Card Act and the Firearm Concealed Carry Act, which is why they're insisting. Are they preempted from regulating? It seems to be your position they're preempted by taxing, from taxing, because that's encompassed in the word regulation in the preclusion clause of the Freud Card Law and the Concealed Carry Law. Our position, Your Honor, is that if this is a tax, it is unconstitutional, full stop under all the United States Supreme Court and Illinois Supreme Court's precedent. But if it's not a tax, if it's an exercise of the police power, it's an alternative argument. If it were construed as an exercise of the police power, then it is preempted by the plain terms of the Firearm Concealed Carry Act and the Freud Card Act, which to be clear, this tax applies exclusively to Freud Card holders because it only applies at retail sale. In the state of Illinois, you have to have a Freud Card in order to purchase firearm or ammunition at retail. So this tax is exclusively on the backs of law-abiding Freud Card holders, who the evidence shows that criminals do not purchase firearms at retail. And again, Judge Chang in the Northern District of Illinois struck down Chicago's ban on gun stores, and that was part of his reasoning, was that the evidence shows that criminals are not going to gun stores to purchase firearms. So what you're doing is you're taking the people who are going to protect themselves from the criminals and buying firearms to protect themselves, and you're putting a tax on those people, a burden on those people, to pay for the misdeeds of those criminals. It makes absolutely no sense. And that's why even if intermediate scrutiny applied, which intermediate, you know, under the precedent, strict scrutiny applies to these sorts of laws when you single out a fundamental right for taxation, and, you know, but ultimately it doesn't matter because under whatever standard of scrutiny that applies, there is a readily available alternative, and that is raise your funds with general taxation that applies across the board. Don't do it on the backs of people that are exercising a fundamental constitutional right. And even under standard intermediate scrutiny analysis, there is no relationship. The county has to have evidence of a connection between the object of their regulation and their goal. And they have no evidence that these law-abiding Ford card holders who are purchasing firearms from gun stores are going out and committing the crimes that they say they're trying to address with these funds, which, by the way, the firearm tax, the funds are not earmarked at all. The county can use them for whatever they want. What is your case support for the argument that you made that the only restriction on the Illinois right to bear arms is police power? I don't have case support, Your Honor, but I have the text of the Constitution which says subject only to the police power the fundamental right or the individual citizen's right to keep and bear arms should not be infringed. And the reason there aren't cases is that nobody has tried this before. This is a case of first impression. No one in this state or, frankly, there are a couple other examples across the country that addresses this Second Amendment question. And notably, we've raised throughout the case this textual argument about the right to keep and bear arms under the Illinois Constitution, and the county has not responded once. And that is because as a matter of text, there is simply no explanation. As the county itself emphasizes under the Illinois Constitution and the Home Rule Authority provisions, the police power and the individual citizen's right are separate powers. And the reason the county is insisting that it's not exercising its police power is because they know they would be preempted if they were exercising their police power. But the problem is that it runs them into not only this raft of precedent from across a wide spectrum of constitutional rights that I've discussed, but also the plain text of the Illinois Constitution. Let's bounce back to your question of first impression issue for a second. We've got the Second Circuit case, Quong v. Mayor Bloomberg, which upholds a tax imposed by New York City which was much higher than the tax the county imposes here. What's your best case on the specific issue of tax that counters Quong? Well, first, actually Quong supports me, and I'll tell you why. So Quong was not a tax. Quong was a fee for processing the application to have a firearm in your home. And under the Cox case of the United States Supreme Court, which arose in the First Amendment context, the court says that if you have the authority to regulate something with a licensing system, there it was parades. They said you can incident to that regulation, you can have a fee that defrays the cost of that. So in Quong, they applied that in the Second Amendment context, and they said, well, the evidence in the record is that it was $340, is that it costs $340 to process these applications, and therefore under Cox, it's legitimate to charge a $340 processing fee. So, you know, this is not a revenue-raising tax. That's the precise reason why that fee was upheld in Quong, and that's why this is a case of first impression, because this is a naked revenue-raising tax. It's not incident to a regulatory licensing scheme, because Cook County has no authority to regulate. And it's easy to see why this doctrine has developed across a variety of rights. It's because the power to tax is the power to destroy. And if you say a constitutional right can be subject to taxation, that is subject to tremendous abuse. And it should not matter what, you know, if the right is favored by a certain political party or spectrum at any particular time, because then if another view was in power, you know, just pick your, that side's least favorite constitutional right, then that's going to be taxed. That is why this is not going to work. You are giving us fee cases, though. The marriage license case was a fee. Well, the marriage license case, so there was a I believe the total fee was $25, if I'm not mistaken. And the challenge was not to the whole thing. So there was like a $15 part of it that went to processing the marriage applications. And the court said that was fine. That's not a problem. The problem was that $10 of it went into a domestic violence amelioration fund. And it was purely revenue-raising. And the court said, this doesn't have anything to do with processing marriage licenses. You're just trying to raise money to use for the general police power interests of the government. And the court said, you cannot do that. That is unconstitutional. You know, strict scrutiny applies. And you can raise your funds in another way. And the same reasoning applies here. So that's the distinction between a fee that is meant to defray the administrative costs of a licensing program, which is, again, Cook County has no authority to have a licensing program here, so this can't, there's nothing for this to be incident to. It is a pure revenue-raising tax. Strictly as to your argument that the Illinois Constitution allows only police power restrictions on the right to bear arms, does that mean they don't even have, no one has the right to do a general sales tax? No, because then that tax is not targeted at the right to keep and bear arms. But you seem to be doing a very broad reading of the constitutional provision, and how do you Well, for example, in the United States Supreme Court has addressed the right to free exercise of religion and has said that, you know, the Constitution says you have a right to free exercise of religion, but generally applicable laws do not implicate that right. It's when the right is singled out. So that's how I'm reading that subject only to the police power. If there's a generally applicable tax, that's not, you know, you're not singling out the right to keep and bear arms. That's just a generally applicable sales tax. We're not asking for exemption from generally applicable laws. What we're complaining about is laws that target the right to keep and bear arms. And those laws, it's only the police power, and you go through the, you know, the framework that has been established to analyze Second Amendment cases, determine whether that exercise of the police power is valid. But it says subject only to the police power. Those words need to have meaning. Why were they put in there if it says only the police power? And it's crystal clear in the Illinois Constitution and the case law that the police power and the tax power are alternative powers and not conflated, to be conflated. I'm still trying to figure out how this tax is different than a city water tax or a city amusement tax or tax on tickets to theater. Well, and I'll tell you, and a good example is the Erringold case that the other side cites, which had to do with a tax on tobacco sales. And that was challenged under the uniformity clause, and the challenger cited Boynton, I believe. And the challenger said, well, we're not dealing with a constitutional right here. So that is how this is distinguished. The government has a broad authority to tax various activities. But when it comes to a constitutional right, the United States Supreme Court and the Illinois Supreme Court, time and again, have made clear that these rights are different. And again, some of those rights that have been addressed, the right to vote, the right to access the courts, the right to marry, the right to freedom of religion, the right to the freedom of the press, it's easy to see how those could be subject to abuse if they were open to taxation. And it's the same with, you know, I'm not going to deny the right to keep and bear arms is controversial. And there are statements in the history here that indicate that there may have been some animus animating the enactment of this tax. Now, I'm not relying on that. That's not essential to my case, but it just goes to the point to show that once you open up a constitutional right to taxation, you're opening up a welter of problems. And the courts have tried to strike those down at the very beginning. Again, Boynton, there was absolutely zero evidence. It's because you're putting a burden on the ability to exercise your right to keep and bear arms. Again, I'll go back to Judge Chang, who said the simple acquisition of a firearm is the most fundamental prerequisite to individual gun ownership. And similarly, in the Ezell case, in the Seventh Circuit, it involved a ban in the city on training with firearms. The Second Amendment doesn't apply simply to the fact of possession, but it applies to things that are necessary to facilitate that possession. So the same thing on the newspaper example, it was a tax on paper unique in the Minneapolis Star and Tribune case. In the Boynton case, it was a tax on a marriage license, an essential step in exercising the constitutional right to marry. So it's the same thing you have here. And again, we're not asking for exemption from the generally applicable laws. We're saying apply the sales tax to us. That's fine. We'll pay you the sales tax. But what the government can't do is single out a constitutional right for a special tax that is over and above the general tax. And again, in Boynton, in the court, it was clear there was absolutely zero evidence that a single person had had their marriage plans altered. And in the Murdoch case, which involved Jehovah's Witnesses going door-to-door and evangelizing, and the city trying to put a tax on them in order to be able to do that, there was no evidence in the record that any single person had been dissuaded from exercising their religion by the tax. This is where we have to look at, and I want you to comment on this. There's a difference between religion and the press as opposed to guns. And it was recognized specifically by Justice Scalia in Heller. Because let's take these hypotheticals. You can't stop felons from exercising their right to free speech. Felons can go to church. They can publish newspapers. They can write magazines. They can't have guns. And the Supreme Court has said it's okay to stop felons from having guns. It's one example that this is not a constitutional right, according to the Heller case, that is quite at the same level as the First Amendment rights. So can we make these parallels in the tax setting? I'm not relying exclusively on the First Amendment. There's a whole array. There's not a single fundamental constitutional right that has been held you can tax. So this would be a de novo... Fundamental rights and then sort of sub-fundamental rights? No, no. There are constitutional rights and there are rights that are not constitutional, like the right to go to an amusement, the right to buy tobacco products. The government can tax those all at once. But are they rights? Can't the government ban tobacco completely? Yes. But the government can't. So that's the distinction. And Heller actually draws a lot from First Amendment case law, and both the Seventh Circuit and the Illinois Supreme Court have drawn from First Amendment case law to say this is how we're going to fill out the jurisprudence on the Second Amendment, because the Illinois Supreme Court and the United States Supreme Court have left these things relatively undefined. So we're going to need to fill it out. And the way they filled it out is by looking to First Amendment case law. And that's what Quam did. It looked to First Amendment case law on fees and said here is how the Supreme Court addresses fees in the First Amendment context. And this is consistent with that. But this here is not consistent with that. And Heller, to the extent it departed from the First Amendment, it seems that the protection is even stronger because it struck down the right to have a firearm in the home without applying any scrutiny analysis, but it just categorically struck it down. And so there's nothing to distinguish. Heller talked about longstanding regulations. Again, a tax on the acquisition of a firearm is not a longstanding regulation. I believe Cook County in 2012 may have been the first jurisdiction ever to do that. So it is by no means a longstanding regulation that could somehow be presumptively lawful. It is a novel regulation. It involves Cook County looking to see that, well, since now we've been preempted from regulating this conduct, what can we do? And unfortunately, you know, in trying to get away from the police power, which they couldn't exercise, they run into this unbreakable wall essentially of precedent saying you cannot do this. In Gun Save Life v. Raul in the Fourth District, your plaintiff there was challenging the constitutionality of the tax. And you were describing the fees in that case as a tax. Are you consistent here? We were going a little further there than we are here because we were making the argument that under Cox, the exception for fees applies when there's some type of rivalrous activity where regulation is required. So you've got to parade. So the government can't just let anybody parade in the streets at any time. The regulation actually facilitates the exercise of the right, and that's the situation in which the fee is allowed. And the Court did not accept that, but then it applied Cox. And that law, to the extent Cox applied, the evidence in the case there was that the fee was not any more than what it took to process the application. So the fee was not a tax in the sense of the tax that I'm describing a tax in this case. Here, it clearly, under Cox, even assuming that Cox could conceivably apply to this type of situation, it's not satisfied here because it's not a fee incident to a licensing regime. It is a strictly revenue-raising tax. The under the ordinance, the firearm tax, the county can use it for anything that it wants. There's no earmarking of it to go to anything. I don't want to interrupt Justice Ratcher's question, but putting aside the preemption issues, do you concede that if Cook County amended the ordinance to specifically earmark this for law enforcement-type purposes that it would be permissible? No. And that's because they could have it if they could have a license requirement to say before you acquire a firearm, you have to get a license. They could get and have a fee to defray the costs of that. Again, there is zero evidence. What they would have said in their brief was all you need to do is turn on the nightly news or open the newspaper to see the costs that guns impose on society, basically. They have zero evidence. The Seventh Circuit in the lower Supreme Court has said you need evidence to back up your regulations under the Second Amendment right. Lawyers' talk is not sufficient. And the actual evidence in this case is that over 90 percent of criminals do not purchase their firearms from gun dealers. So there is a total disconnect. It's even worse than in the Boynton case where there was evidence about the connection between marriage and domestic violence. Here there is no evidence. All the evidence goes the opposite direction. So even under the uniformity reasonableness test, much less a heightened intermediate scrutiny or strict scrutiny, the county cannot meet that burden. Could you briefly address the issue of standing? Why does Smolenski have standing to challenge the firearms tax if she has not paid the firearms tax? And why does Maxson have standing to challenge either tax when they are paid completely by the customer? And the general manager at Maxson indicated at the deposition that the current software is able, capable of complying and reporting requirements without a significant additional financial burden. Yes, Your Honor. I'm happy to address that. I'm glad you asked. So first of all, this Court needs only to find that one plaintiff has standing. Under the Buttel case of the Illinois Supreme Court, 59-L-2nd-146, explicitly said that. We cited United States Supreme Court cases for the same proposition. And the county and what standing is more generous under state law than federal law. And it's also an affirmative defense. It's not jurisdictional. So if they concede something, then, you know, we have standing to raise it. They've conceded that Smolenski has standing to challenge the ammunition tax because she paid the ammunition tax. And there are two Gun Save Life members who we've specifically named, Clemenzos and Bach, who have paid the firearm tax. So it's clear that under their concession about someone paying the tax having standing to challenge it, that they have standing to challenge the firearm tax. And Gun Save Life has standing to challenge it on their behalf under the International Union of Operating Engineers case. So between those things, you have the complete cases before you. They're standing. The Court does not need to address anything else. But to the extent the Court wishes to, Smolenski desired to purchase a firearm from within Cook County. And she... The Glock? What's that? The Glock? Yes, the Glock. And she visited the store to purchase it and said, well, with this $25 tax, I'm not going to do that. And the Supreme Court and this Court, actually, in the Chicago Park District's case, allowed a pre-enforcement challenge to a tax. So she has standing to challenge both taxes. And the Chicago Park District case is also very important for Maxine's standing in the sense that the tax in that case, that was the Chicago Park District, which operated the mooring on the river. And there was a tax put on those moors, on the people who rented them from the Park District. So the tax was not on the Park District. And this Court held that because that was going to affect the Park District's revenues, that the Park District was going to have to come in and challenge that tax in court, even though the incidence of the tax was not on them. And that's the same thing with Maxine here. You know, the evidence is both that this is going to impose substantial compliance costs on them and that it's going to hurt their financial position. The evidence in the record is that during the first six months... How does that hurt them? During the first... The customer is the one who's paying. Well, because... They already have the system in place. Well, the customers are going to go across the county line and purchase their firearms and ammunition from somewhere else. And that's the evidence shows that the first six months of the ammunition tax, Maxine lost $51,000 of revenue because of the tax. And also, the evidence does not show that their software can handle this. All that the deposition testimony shows is that they have software that can report ammunition sales, but as Sarah Natalie's declaration makes clear, that software reports ammunition sales in terms of boxes. It does not report ammunition sales in terms of rounds of ammunition. And Cook County has taxed the rounds of ammunition. It would be like having a tax on crayons, and you're taxing the individual crayons and not the box of crayons. So that's what... They're taxing individual rounds. They come in boxes. So Maxine has to manually determine how many rounds are in each box in order to meet its record-keeping requirements. And that's very clearly set out in Sarah Natalie's declaration, which is in the record of this case. Natalie's declaration, is that the one that... Is she the one who opines or actually states that Maxine lost $51,000 in revenue in the first month because of the tax? That was an interrogatory response. So it's in the record? Yes, it's in the record. And it's coming from her? It's coming... I forget if it's coming from Maxine or... I mean, I believe she is the one who filled this out. But it's coming from someone at Maxine. Because, you know, back when I was a math major and did statistics, okay, you know, if you're trying to take event A and connect it to result B, normally you've got a multiple regression analysis. There's nothing in this record that actually ties these two together other than a hunch, isn't there? She says, well, that month I lost $51,000 in revenue. It must have been because of the tax. How do we know it was because of the tax? Couldn't it have been because of bad weather or it was not gun season or something else? Well, my recollection is that it was over a six-month period and they compared the same six-month period to prior year. And, you know, yeah, it's not a multi-factor regression analysis, but the one factor that did change was the imposition of this tax. And that affected the revenue. And the point is, okay, you know, maybe 51,000 is not the true number. Maybe it was 75,000. Maybe it was 25,000. But there's no evidence in the record combating the suggestion that they did lose money and that this is a simple matter of economics to realize that this is going to hurt them when you have to put a, you know, this was over 10% of the purchase price of ammunition, this tax. If you have to put that on ammunition, put an additional $25 of guns, the gun dealers just outside the borders are putting up billboards saying, you know, don't pay the Cook County tax is what they're saying on their billboards. And so people being rational consumers are going to. Okay. Yeah. Sorry. Sorry, Your Honor. I will appreciate the questions. If there are no other questions. We'll save it for the end. All right. Excuse me. Would you state your name for the record? I don't think you did. Yes. It's Pete Patterson. I believe I said it at the beginning, but I said it quickly. Thank you. Appreciate it. Good morning, Your Honors. Assistant State's Attorney, Kristen Duffy, on behalf of Zahra Ali. You're Kristen Duffy? I am. Okay. You will have 33 minutes. Thank you, Your Honor. Good morning. As we've talked about before and throughout our brief, the firearms and ammunition tax does not implicate the Second Amendment. We are merely imposing a condition and qualifications on the commercial sale of firearms, and it does not in any way impinge on the right to bear arms. Okay. So a condition is not an impingement? No. We would suggest not. This is just a de minimis amount of tax on the sale of a firearm, and in no way is it banning or restricting anyone from their ability to bear arms in this case. Judge Atkin's decision appears to rest on his conclusion that this is a de minimis tax and there was no evidence in the record that it deterred anyone from exercising their constitutional right under the Second Amendment. Does it make a difference that the tax is so low? Because if it was a tax on newspaper printing, we wouldn't be here. If it was a penny a gallon or something. Your Honor, it is a de minimis tax here, and we've seen that, like we talked about earlier, across the country there have been other, the fee case out of New York where it was $340. There was a case that was struck down that was $1,000, but here it's a very small tax. Okay, wait a minute. A case of $1,000, was it a fee or a fine? Because I do think there's a difference. That was a tax case out of, let's see, I apologize, I'm not seeing it right here, but there was a tax case where they had put a $1,000 tax and that was struck down as being overly broad. But here we have a very minimal tax, which is connected to a substantial government interest, and that is public safety here. The Cook County expends lots of taxpayer money dealing with the cost of gun violence to the county, through both the police, the corrections department, and the Cook County Hospital. Is there evidence in the record, the appellant, say that no evidence was produced below? We do have in the footnotes that are in our brief, we do suggest websites that can take you to the costs that are borne by Cook County. And did you ask the court to take judicial notice of those costs? Yes, we did. Because we're all sitting around saying, yeah, we know what happens at Stroger Hospital, and therefore. Yes, we did in front of Judge Atkins. Is it at the risk of moving you off your strip there? That's okay. Is it the county's contention that no one has standing for any claim? No, Your Honor. We would suggest at this point, after reviewing the briefs and the case law, that at this time there is a substantial standing for a gun safe life, although. . . As to both taxes? As to both taxes. Okay. And, Your Honor, we would stand on our earlier arguments, though, that Maxson's, as a retailer, does not have standing because, in fact, it's the patrons who are paying the tax, and that Maxson's is not burdened in any way because it does have computerized software, which does tally and determine the amount. So they are not out any money, and they do not have standing. Well, what about their argument that the software counts by rounds, which is the unit that the bullets are sold in, with the taxes by bullets, and, you know, one box may have 16 bullets, another manufacturer's box may have 64 bullets. And so they have to sit down every time and do it manually. We would suggest that I'm sure there's a way that the computerized program could be altered to save the exact amount. . . Well, that's the issue of the question, though. I mean, you can alter any computer program to do what you want it to do. That's correct. But that still imposes a burden on Maxson's. But Maxson's is going to have to report to the county all the ammunition and the firearms that are sold anyways. And so doing so, tallying up the additional amount for the tax, is not going to be an additional burden that is borne by Maxson's. And in what way are they required, absent the tax, to report the ammunition sold? They have to report gun sales and ammunition sales to Cook County. Under what provision of law? Under the Cook County ordinance, they have to report those. The one here. Yes. At issue. What about Smolenski? Smolenski, in this case, when we initially started the case, had not paid either the firearms or the ammunition tax. In between when the motion to dismiss was filed and when they re-pled their case, she did go out and purchase ammunition within Cook County. Her deposition she testified prior to that, she had not purchased firearms or ammunition within the county limits. So as a result of this case, she did go out and purchase ammunition. She has never purchased a firearm in Cook County. So we would say as to the firearm count here, she has no standing. As to the ammunition, we suggest that you can affirm on any grounds, and if you were to find that she did not do that timely to file this case, we would affirm. And Maxson's argument about its economic loss by loss of sales? There is nothing to suggest that the decrease in sales by Maxson was a result of the ammunition and firearms tax here. Yes, they did claim to have an economic loss the year that this started, but as you said, Your Honor, it could be weather. It could be a number of factors. There could have been another store that opened up down the street. We have nothing to suggest that it was related in any way to the ammunition and firearms tax. And you've been collecting the taxes? That's correct. We have been. And where has it gone? It goes into the general public safety fund. If you were to look at the Cook County budget, there's a line item for it on page 18. I'm sorry, page 18. You can see that it goes into the general fund, into the public safety fund, and from there it's distributed throughout the county. Again, the county spends a great deal more on public safety than the tax brings in, but it does help defer the costs of public safety. Is that true as to both taxes? I thought only one went to the public safety fund. They both go to the public safety fund. They go through the general fund. Pardon me? They both go into the public safety fund within the general fund. Within the general fund. Yes. So they seem to be arguing that one of the two taxes is earmarked only broadly for the general fund, therefore it cannot be presumed to be related to the cost of regulation. And while I understand their argument, I think as a way of our accounting, that the general fund within it is the public safety fund, and it does say general fund in the actual ordinance, but it would go into the general fund, which includes the public safety fund. And by what mechanism is that tax transmitted from the general fund to the public safety sub-fund? Is it just administrative convenience? Is it an internal decision? Because that's not in the ordinance, is it? No, it would be an administrative convenience. The county does have a huge budget, and it would be hard to follow every single penny that's coming in and going out. So it goes into the general fund and then can be redistributed. Yes, correct. Counselor, how do you justify a tax on a fundamental Second Amendment right? Well, Your Honor, when we look at the fundamental right, unlike the fundamental rights, the right to free speech, right to religion, right to vote, this right before us now is subject to conditions and qualifications. They set that forth in Heller, and the conditions and qualifications of commercial sale of firearms. And that's what we have here, that it is only a condition or a qualification, and as such, it does not trigger the strict scrutiny. As we look at all the courts across the country, if the courts wanted to treat the Second Amendment as a fundamental right, they would imply a strict scrutiny, and there are no courts that are doing that. And if Heller wanted to have treated this as a fundamental right, which it didn't, because it's specifically just for those that it's taxed to. So you're saying it's not a fundamental right? It's not a fundamental right. What is it, the Second Amendment? The Second Amendment is not a fundamental right. Because if it was, it would be subject to strict scrutiny, and as we can see here, it clearly should be, if anything, intermediate scrutiny. So without running the west-west search right this minute, so if you're saying if we got Heller and McDonald on a screen, you're not going to find a designation that's a fundamental right anywhere in those? It's the lower courts that are doing that. Well, in Heller and McDonald, when they are analyzing the case before them, they are looking at it and they say that it is okay to impose conditions and qualifications on the commercial sale of firearms. And unlike those other rights we have before us that have been determined as fundamental rights, like free speech, the right to vote, the right to marry, those involve strict scrutiny, and that's what's implied there. There's nothing to suggest that in firearms cases, you're entitled to strict scrutiny because it's not a fundamental right. Are there any other jurisdictions that you're aware of? I think we may have asked this, but the $1,000, besides the New York Bloomberg case that have specifically upheld some kind of a tax or a fee on guns and ammunition since Heller? Since Heller, there is a case in Seattle that has upheld it. I think it's Watson v. Seattle, and that was recently in the last two years. Since this case has come forward, that is strictly a tax case where they put a tax on firearms in the city of Seattle. There was a case pending in San Diego that I don't believe has been resolved yet. And, again, if we go back historically, there has been a tax on firearms starting since 1936. There was a congressional tax on it. Well, their response, you know, I saw that in the brief, and I thought, well, this might resolve it because there's a U.S. Supreme Court case, which is Kaczynski. But then their response is that that federal tax got amended later on, probably in the 60s, 70s, to only apply to things like machine guns and sawed-off shotguns. That's correct. It was later amended. However, there's nothing in that language after it was amended to suggest that there couldn't be a tax based on handguns and other firearms. And it sounds like Kaczynski was not a Second Amendment case. No, it was not. It was a tax case. Just like this is a tax case, not a Second Amendment case. So, you know, it suggests he seems to have operated in the wood of the Commerce Clause and Congress's power to just generally tax things. And, similarly, in this case, we are suggesting that it is firearm and ammunition tax that we are allowed to impose under home rule. It is a tax, and it doesn't implicate the Second Amendment. What is your response to the reading of our state constitution that the right to firearms can only be subject to police power? Your Honor, again, I would suggest that this is simply a condition and qualification on the commercial sale of firearms, and it is a tax. And under home rule, under Section 7B, I believe 7B-H, that we have the home rule allows us to tax, and it's carved out separately from the police power. And so we would be able to tax firearms under that provision. That leads me right into another question. I'll invite a response from the other side, too, on this. The Illinois Supreme Court, which is our boss, loves the lockstep doctrine. They are very strict that any provision in the Illinois Constitution that has a parallel in the U.S. Constitution is to be interpreted exactly as it has been by the U.S. Supreme Court. And that has put us in a box quite a lot because we can't, under that jurisprudence, expand the Illinois Constitution to grant more rights than the U.S. Constitution necessarily has been interpreted to grant. Here, we have the Second Amendment to the U.S. Constitution, which says a regulated militia being necessary, etc., etc., the right to keep and bear arms shall not be infringed. In contrast, the Illinois Constitution's parallel provision that is at issue before us has the provision subject to the police power, the right to keep and bear arms shall not be infringed. And I'm wondering if we can read anything into this situation, this what appears to be deliberate difference in verbiage. No one has given us anything from the 1970 Constitution debates that I can recall in the briefs on this. Why is this intended to be different? Does it tend to be broader? Does it tend to be narrower? Or is, for instance, the Illinois Constitution subject to police power simply meant to codify existing federal law? Yeah, I do believe that it's meant to probably codify existing law. When we look at it, again, we've got Heller, which is interpreting the federal statute and its imposing conditions and qualifications on the commercial sale of firearms. It is not saying that the Second Amendment is without some limitations. And similarly in this case, when Heller is interpreted by the state court in Wilson, the court then takes the same approach as Heller and takes it one step further and says that we are going to use intermediate scrutiny here, that this is not a fundamental right, and if it does impinge on any type of right, then we will make sure that it is substantially related to an important governmental interest, which in this case it clearly is. We have a governmental interest in defraying the societal costs of guns in Cook County, which is very significant. And so I think, going back to your question, I think that we are in lockstep when we look at how our courts have interpreted both our Constitution and the federal Constitution. Counsel, isn't that lockstep? Doesn't it allow the Illinois Constitution to be broader, but it cannot be less than the federal? Yes, Your Honor. How do you distinguish the Boynton $10 marriage fee case? Your Honor, again, as we were talking about before, those are fundamental rights. And in the Boynton case and the Crocker case, what the court found is that those fees that were imposed in those cases were not tightly fit to the domestic violence fund that they were funding. They found that those were too discerningly related to be a compelling governmental interest. So unlike this case, where we do have a tight fit between the firearms and ammunition tax and the deferring the societal costs of guns in Cook County, and we can see where that money is being used to defer those costs and how those issues are related, because there is a great deal of cost to Cook County from gun violence and the related matters with gun violence. In the marriage case, there is not a nexus between marriage and domestic violence counseling. And so when you look at the different levels of scrutiny that's used in the marriage cases, as well as they are not able to tie those to what's being funded, those cases are different. Help me understand your position that the right to keep and bear arms, which is specifically listed in the Constitution, is not a fundamental right, but the right to marry, which isn't mentioned in the Constitution, is. Your Honor, again, we go back to what type of scrutiny has been applied by the courts. Specifically with regard to the firearms and ammunition cases, we see that they utilize intermediate scrutiny, which suggests it is not in fact a fundamental right, plus the courts have placed limitations on the right to bear arms over the years because of its public safety factor. There is not a public safety factor in marriage, probably depending on your marriage, but there is not traditionally a public safety factor in those cases. And with marriage cases, they always apply strict scrutiny. Same with free speech, right to free religion. Those are strict scrutiny versus intermediate scrutiny, as we have in this case. Our case is more similar to the Erringill case, which was brought up before, which is the tobacco tax, where the tax is directly related to taking care of medical bills and long-time care for people who are suffering from lung cancer. Or if you even take it outside of and think in your own life how everyone bears a toll tax and you have the right to interstate travel, however, everyone pays a toll tax going from state to state. What about Mr. Pedersen's argument that the relationship between what you're seeking to achieve and the tax does not exist because you're taxing law-abiding citizens? Your Honor, again, that goes back to just the examples we just gave out with traveling over the interstate. Or even more closely, if we look at, like, a school tax, where everyone pays the real estate taxes for kids to be able to go to school, whether or not you have kids in the school. Here, the people who are actually utilizing guns, buying guns, are paying the tax to defer a small amount of the cost to the county as a whole. Similarly, that everyone pays into the school tax whether or not you have kids in the school system. Is your position that GSL does not have associational standing? Is that right? It was our position that GSL does not have associational standing. But it's not your position anymore? We are willing to concede that. We don't agree with it, but we are willing to concede it at this time. You what? We are willing to concede that at this time. We don't agree with it, but we'll concede it at this time. You're willing to concede? That GSL has associational standing. That it does have associational. Yes. I was about to ask you about the Guns Save Lives v. Raul and the Fourth District case. We would suggest that you could affirm on any grounds that you see fit. So if you feel that that trumps our goal, we'd be happy to have you find that. So you're suggesting the standard of review is what? It's intermediate scrutiny. Not heightened? I'm sorry? Not heightened? Yes, that it would be intermediate scrutiny. That it is not strict scrutiny and it's not rational business. All right. Thank you, counsel. Thank you. If there's no more questions, then I would ask you to respectfully affirm the lower court's ruling in this case. And thank you very much for your time. Thank you. That was pretty nice. Mr. Patterson, would you like to respond to my question about the lockstep doctrine and the different verbiage between the constitutions of the U.S. and Illinois on this issue? Yes. I'm not aware of any, you know, debates in the convention or anything like that. But it's clear that the language is different. And if the language is different, that can be given meaning. And ultimately, you know, I don't think the meaning is different. I think that under the Federal Constitution, you can't tax the Second Amendment under all the cases we've discussed. So that's basically codifying that to say that it's subject only to the police power. So it is consistent. It's just particularly clear in the Illinois Constitution. I have several points I want to make, but I'll make them quickly. First, in terms of this being a condition or qualification on the sale of firearms, if you explain why that's not the case. But even if it is, in the Shires case, the Illinois Supreme Court held that even Heller's presumptively lawful longstanding regulation must be subject to heightened scrutiny under Heller. So there it was asserted that the law involved firearms within 1,000 feet of public parks, was a sensitive place regulation. The Court said, well, even if it is, we still have to give it heightened scrutiny, even if it is one of Heller's longstanding presumptively constitutional laws. So the Court went on to give it an elevated form of intermediate scrutiny and struck it down. Second, in terms of the ban being de minimis in the Shires case, again, the government had advocated for a substantial burden analysis to determine whether heightened scrutiny applied. And the Court rejected that and said, no, once a burden applies, that's it. And in terms of substantiality, this is $25 on a firearm. In the marriage case, it was $10. In Harper, the poll tax was $1.50. This is much more significant than the taxes that had been found invalid. So the de minimis alleged nature of it has no bearing. In terms of evidence about costs, what they don't have evidence of is that these lawful purchasers are the ones inflicting the costs. Sure, the county spends a lot of money on public safety. We can see that. What they don't have evidence is connecting the one to the other. The assertion that the Second Amendment is not a fundamental right, I think maybe this explains the problem and why we're here. It is, clearly, under Heller and McDonald. In fact, it's so fundamental that it was incorporated. You know, the incorporation doctrine is not automatic. It's only the most fundamental rights that get incorporated against the states. Well, McDonald incorporated it to the states. Yes. Illinois was the stated issue in that case. Right. But does either Heller or McDonald specifically say there's a fundamental right? I'm pretty confident McDonald does. But even if not, yes, because in order to be incorporated, it has to be fundamental to the concept of an ordered society. That's the task for incorporation. So it clearly holds that it is a fundamental right. And as Your Honor said, it's listed in the Constitution and the Bill of Rights, and other rights that aren't listed there have been held to be a problem. The Seattle case did not involve a Second Amendment challenge. It was purely preemption, so that's no precedent for them. The federal tax, to be clear, it never applied to anything but sawed-off shotguns and machine guns. It didn't apply to handguns. It didn't apply to long guns. There was a legislative proposal to include those, and they were stripped out because presumably it was recognized that it would not be appropriate to tax those items. So since the 1930s, there has never been a tax on, you know, standard handguns, rifles at the federal level. It's only those non-protective firearms. The Court of Counsel said marriage and First Amendment rights always get strict scrutiny. That's not true. There's time, place, and manner restrictions in the First Amendment that get intermediate scrutiny. Under Zablocki v. Red Hail, the Supreme Court said marriage regulations don't always get strict scrutiny. So the fact that some cases have applied intermediate scrutiny to Second Amendment rights says nothing about this fundamental right issue. And finally, my last point, this interstate travel. Yes, toll roads that apply equally to interstate and interstate travel are fine, but the cases specifically say if they discriminate against interstate travel, they are unconstitutional. So it's the same principle. You cannot single out the constitutional right for a special burden. It's only you can apply generally applicable laws. You can't single out the exercise of the fundamental right for a tax. If there are no further questions, I'll finish. Thank you. Thank you. Thank you both. This matter will be taken under advisement. This court is adjourned. Please rise.